IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIYA KARASENI,

       Plaintiff,                       No. CIV S-04-2293 MCE GGH

     vs.

JO ANNE B. BARNHART,             <u>FINDINGS AND RECOMMENDATIONS</u>
Commissioner of
Social Security,

       Defendant.

_____/

        Plaintiff, proceeding in pro se, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, the court recommends that plaintiff's Motion for Summary Judgment be GRANTED, that the Commissioner's Cross Motion for Summary Judgment be DENIED, that the Clerk be directed to enter judgment for the plaintiff, and that this matter be remanded to the Commissioner for further development of the record.

<u>BACKGROUND</u>

        Plaintiff, born September 5, 1952, applied on May 24, 2002 for disability benefits. (Tr. at 67.) Plaintiff alleged she was unable to work since September 6, 2002 due to headaches, neck and back pain, depression, hearing problems, and high blood pressure. (Tr. at 88.)

In a decision dated May 6, 2004,[1] ALJ L. Kalei Fong determined plaintiff was not disabled. The ALJ made the following findings:[2]

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's hypertension, varicose veins, back strain with mild L4-5 stenosis, hearing loss, major depression controlled on medication, possible chrondromalacia left knee, mixed type headaches, mild anemia, history of gastritis, and history of carpal tunnel syndrome impairments are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

---

[1] Plaintiff had previously applied for disability in 1999, but was denied in 2001. (Tr. at 49-50.)

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
   Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
   Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
   Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
   Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
   Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

> 4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 5. The claimant has the following residual functional capacity: lift/carry 10 pounds, sit six hours, stand or walk two hours consistent with sedentary work.
>
> 6. The claimant's past relevant work as music teacher did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 416.965).
>
> 7. The claimant's medically determinable impairments do not prevent the claimant from performing her past relevant work.
>
> 8. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(e)).

(Tr. at 36.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the Appeals Council Erred in Refusing to Grant Review; B. Whether the ALJ Erred in Rejecting the Opinions of Plaintiff's Treating and Examining Physicians; C. Whether Plaintiff's Third Party Statements Should Have Been Considered in Regard to Her Past Work; and D. Whether the ALJ Erred in Finding Plaintiff Capable of Performing Past Relevant Work.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

(1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

    A. Appeals Council

Plaintiff first alleges that the Appeals Council should have granted review and reversed the ALJ's decision based on lack of substantial evidence. The Appeals Council denied plaintiff's request for review on August 9, 2004. (Tr. at 5.)

This claim of error cannot be rectified by this court which is vested with authority only to determine whether the final decision of the Commissioner is supported by substantial evidence and performed under correct legal standards. 42 U.S.C. § 405(g). A well accepted tenet governing judicial review of social security decisions is the principle that, when the Appeals Council denies review, *the decision of the ALJ is the final decision*. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994); Keeton v. Dep't of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994); Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992); Russell v. Brown, 856 F.2d 81, 83-84 (9th Cir. 1988); 20 C.F.R. §§ 404.955; 404.967 et seq.; 416.1455; 416.1467 et seq.

In the instant case, since the Appeals Council denied review, whether it should have granted review and reversed the ALJ's decision based on lack of substantial evidence is beside the point because the ALJ's decision is the final decision of the Secretary. Accordingly, any basis for appeal must be based on an error made by the ALJ, and not the Appeals Council.

\\\\\

\\\\\

\\\\\

4

B. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating and Examining Sources

Plaintiff contends that the opinions of her treating and examining sources were rejected in favor of the non-examining state agency physicians.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[3] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

---

[3] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

2001),[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Plaintiff does not specify which physicians' opinions were improperly rejected; however, of the physicians who evaluated plaintiff for the relevant time period, beginning May 24, 2002, the ALJ assigned little weight to the opinions of Drs. Barchan, Freeman, and Zhalkovsky. For each of these physicians, the ALJ gave specific reasons to discount them. In regard to Drs. Barchan and Freeman, The ALJ stated:

> Dr. Barchan based his opinion on the totality of all the diagnoses the claimant has ever had at Harbor Medical Clinic and failed to note that her spinal stenosis is mild, that her headaches respond to medication, that her hypertension is severe because of medication noncompliance, that her bilateral carpal tunnel syndrome was borderline and has not required ongoing treatment, and that her use of splints improved her complaints of 'neuropathy.' In addition, the limitations he noted are consistent with performing sedentary work. Similarly, the undersigned gives little weight to the conclusions of Dr. Freeman since he also based his opinion on the totality of all the diagnoses the claimant has ever had at Harbor Medical Clinic. It is inconsistent that he would find further markedly reduced function just months after Dr. Barchan's findings, especially since there has been no worsening in the claimant's medical condition.

(Tr. at 35.)

Dr. Barchan found that plaintiff could not perform the full range of sedentary work. (Tr. at 230-31.) On May 15, 2003, he stated that she could walk, sit or stand for two to four hours in an eight hour day, and less than one hour without interruption. (Id. at 228.) She could lift less than five pounds frequently, and five to ten pounds occasionally, at most. (Id. at

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

229.) His opinion was based on an MRI indicating central canal stenosis, a nerve conduction study indicating polyneuropathy and radiculopathy,[5] high blood pressure, significant neurosensory hearing loss, chronic headaches, and low back and leg pain. (Id. at 228, 229.)

Dr. Freeman's residual functional capacity assessment, dated December 2, 2003, was even more restrictive than that of Dr. Barchan. He found that plaintiff could only sit, stand or walk for one to two hours in an eight hour day. (Tr. at 290.) She could only lift less than five pounds occasionally. (Id. at 292.) His findings were based on the same tests outlined by Dr. Barchan, with the addition of bilateral borderline carpal tunnel syndrome. (Id. at 291.)

The ALJ relied on the part of Dr. Barchan's opinion which limited plaintiff to lifting ten pounds, while accepting the following functional restrictions from Dr. Borges and the state agency examiner. Dr. Borges performed a consultative exam of plaintiff without the benefit of medical records. Plaintiff reported that she did not use any assistive devices and could walk on uneven terrain as well as up stairs. (Tr. at 178.) Exam indicated full range of motion in spine and all limbs. (Id. at 180.) Weight bearing on the left was difficult as was tandem walking and deep knee squatting due to left knee pain. Back exam and straight leg raising were negative; however, there was tenderness in the cervical and lumbar areas. Dr. Borges also noticed crepitus in the left knee.[6] (Id.) He concluded that he could not rule out chondromalacia patellae of the left knee. There was also cervical, thoracic and lumbar myofacial strain. Despite tenderness in these areas, there was full range of motion. Plaintiff also had postural tension headaches which were probably increased with stress and depression. Plaintiff also had varicose veins, but there were no signs of erythema or thrombophlebitis. (Id. at 181.) This physician also noted plaintiff's history of depression. (Id.) Dr. Borges would limit plaintiff's functional capacity based on plaintiff's knee and spine problems only. He thought plaintiff should only occasionally squat,

---

[5] The actual diagnostic studies supporting these diagnoses are not found in the record. See discussion *infra*.

[6] He later assessed crepitus in both knees with full range of motion. (Id. at 181.)

kneel, and climb. He limited walking to six hours, on a noncontinuous basis. Plaintiff could sit for eight hours, and could lift, carry, push and pull up to 25 pounds frequently. She was also able to reach overhead and perform continuous hand motions frequently. (Id. at 182.)

The state agency examiner, Dr. Bianchi, opined, based on plaintiff's medical records, that plaintiff could occasionally lift up to fifty pounds, frequently lift up to 25 pounds, stand, walk or sit for six hours in an eight hour day, push and pull in an unlimited amount, frequently, climb, balance and stoop, and occasionally kneel, crouch, and crawl. (Tr. at 232-34.)

The ALJ's reasons for discounting part of Dr. Barchan's opinion and Dr. Freeman's opinion were that these physicians based plaintiff's functional capacity on all of the past diagnoses that plaintiff had at the Harbor Medical Clinic rather than her condition as of May, 2002. In particular, the ALJ noted that Dr. Barchan did not acknowledge that the spinal stenosis was mild, that headaches were improved with medication, and that hypertension would improve with medication but plaintiff was not compliant. The ALJ also thought that plaintiff's carpal tunnel syndrome was only borderline and did not require ongoing treatment, and neuropathy was improved with splints. (Tr. at 35.) He also discounted Freeman's opinion because his evaluation was only months after Dr. Barchan's evaluation and plaintiff's condition had not worsened. (Id.)

The ALJ's reasons for rejecting these physicians are specific and legitimate. The court has now scoured the medical record and finds no objective evidence of cervical, thoracic or lumbar problems including spinal stenosis or polyneuropathy, other than tenderness on palpation. (Tr. at 242.) Although doctors and the ALJ refer to an MRI and nerve conduction study indicating spinal stenosis or mild spinal stenosis, and polyneuropathy and radiculopathy, respectively, there are no radiological or other objective studies which bear out this finding, and the court could not locate these tests in the file. The ALJ refers to an earlier MRI which precedes the relevant period; however, even this study is not found in the current record. Dr. Barchan's and Dr. Freeman's diagnoses of these impairments are made without underlying objective findings other than exams. Their referral to past MRIs cannot be substantiated on this record.

8

See e.g. tr. at 228. The ALJ refers to a November, 2002 record from Harbor Medical Clinic which shows mild L4-5 canal stenosis; however, the only record from that month contains a note that is illegible but clearly does not state this finding. (Tr. at 187.) This record is a form which requires the physician to make a finding and if abnormal, describe it. Next to "musculoskeletal," the doctor has a one word illegible term, but has left blank the section to explain abnormal findings, implying that this area was either normal or inconclusive in some way. Therefore, assuming plaintiff has any spinal stenosis at all, substantial evidence supports the ALJ's finding that plaintiff has only mild spinal stenosis.

Furthermore, the definition of spinal stenosis indicates that pain is relieved by sitting or flexing the back, which can be done while seated, supporting the ALJ's reliance on findings that plaintiff can sit for six hours and therefore do sedentary work. The Merck Manual 1363 (16th ed. 1992).

The ALJ's rejection of plaintiff's other impairments is also supported by the record. Plaintiff conceded that her headaches improved with medication. (Tr. at 312.) High blood pressure was due to poor compliance with medications, as noted by Harbor Medical Group. (Tr. at 209.) An ECG was normal in March, 2003 other than the hypertension. (Id. at 317-19.) Additionally, plaintiff reported to her treating sources that she felt better with her current medications. (Id. at 201.) She did not want to continue physical therapy for this reason.[7] (Id. at 202.)

In contrast, Dr. Borges, the consultant upon whom the ALJ relied for the most part, found that plaintiff could do more than sedentary work. The ALJ chose to rely on most of this opinion except that where Borges found plaintiff could lift 25 pounds frequently, the ALJ chose to rely instead on Dr. Barchan's opinion that plaintiff could only lift ten pounds.

---

[7] The ALJ also referred to plaintiff's carpal tunnel syndrome which he noted was borderline and that splints improved her complaints of neuropathy. (Tr. at 35.) These findings are based on records prior to the relevant period, and the more recent records indicate that these problems did not endure. (Id.; tr. at 31.)

In regard to plaintiff's depression, the ALJ gave less weight to Dr. Zhalkovsky than to the opinion of consulting Dr. Joyce. He explained that Zhalkovsky severely restricted plaintiff based on minimal findings, and that his records indicate plaintiff does well on medication. Further, this psychiatrist opined that plaintiff's mental impairment was not the most disabling diagnosis for plaintiff. (Tr. at 35.)

Dr. Zhalkovsky examined plaintiff's mental status in November, 2002 and again on June 14, 2003. On this most recent date, he opined that plaintiff's depression was "stable on relatively small dose of Remeron, so that, no change in her treatment regimen at the present time is indicated." (Tr. at 296.) He thought plaintiff could continue by see her primary care physician, and see him only as needed. (Id.) His description of plaintiff does appear to indicate only mild mental impairment, as found by the ALJ. He described plaintiff as alert, pleasant, cooperative, able and willing to participate in a coherent conversation, fully oriented, and that she had no significant problems with communicating, paying attention or concentrating. (Id.) He added, "[t]hought process is goal directed, insight and judgement as well as motivation for future treatment - all looks okay." (Id.) After making these statements, the psychiatrist completed his assessment of her ability to work and found that she had a poor ability to follow work rules, relate to co-workers, use judgment, understand, remember and carry out simple instructions interact with supervisors, maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations, and be reliable. (Tr. at 297-99.) He also opined that plaintiff had no ability to deal with the public or work stress, function independently, or understand, remember and carry out detailed or complex instructions. (Id.) These conclusions do not appear to be consistent with his findings at that time. Further, this psychiatrist does not appear to have conducted any mental status tests to support these determinations, but based his opinion only on his conversation with her.

Dr. Zhalkovsky also wrote a letter to the Department of Social Services, dated January 20, 2003, in which he diagnosed plaintiff based on DSM-IV. See Diagnostic and

Statistical Manual of Mental Disorders 33 (4th ed.1994) ("DSM IV").  He diagnosed major depression, single episode, moderate to severe, with no psychotic features, and assigned a GAF score of 40 to 45 which included the past year.  This psychiatrist based his opinion that plaintiff could not work on his clinical observations as well as her other medical problems, noting that her primary care physician's opinion was very important in this case. (Id. at 215.)  This opinion also does not appear to be supported by significant findings which would support a GAF score this low, and his emphasis on plaintiff's physical impairments is misplaced, especially after the ALJ appropriately discounted the opinions of plaintiff's treating physicians in this regard.

In contrast, Dr. Joyce conducted a complete exam on August 28, 2002 which included a psychosocial history, a clinical examination of intelligence, a formal cognitive evaluation and diagnoses based on a DSM-IV multiaxial evaluation. (Tr. at 172-76.)  Although this psychiatrist only saw plaintiff one time, his evaluation was much more thorough.  He found no evidence of any mood, thought or anxiety disorder (such as depression), and that plaintiff had a GAF score of 65.[8]  He found plaintiff's cognitive ability to be within normal limits when considered in a cross-cultural context. (Id. at 175.)  She could follow simple instructions, could maintain attendance and perform in a work schedule, showed no distractability, anxiety or somatic behavior, could complete a workday and workweek without interruption, could interact appropriately with others and respond to supervisors and coworkers appropriately, as well as accommodate changes in a routine work setting. (Id. at 175-76.)

Because the ALJ gave specific and legitimate reasons for discounting plaintiff's treating physicians, he is supported by substantial evidence.

\\\\\

\\\\\

---

[8] A GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  DSM IV.

11

C. Plaintiff's Third Party Evidence

Plaintiff contends the Appeals Council erred by not considering the third party evidence in the form of statements of schoolteachers Jerry Smith and Susan Forster who opined 122that a person with plaintiff's functional limitations could not work as a music teacher.

An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Similar to the ALJ's role in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

These educators described the job duties of a kindergarten music teacher and how someone with plaintiff's limitations would not be able to squat, kneel, stoop or bend next to small children, sit on the floor, play piano or hear music as required. (Tr. at 325-29.)

Although the ALJ did not have this evidence before him, he did consider other evidence of record which contained the same information.[9] For example, the ALJ acknowledged plaintiff's hearing loss but noted that she did not require a hearing aid and could hear at the normal spoken level as demonstrated at the hearing. (Tr. at 34.) Additionally, plaintiff's functional limitations were addressed by the ALJ as set forth in the previous section. Therefore, these lay witness opinions are cumulative to the evidence set forth and thoroughly addressed by the ALJ. Moreover, these witnesses did not have personal knowledge of plaintiff's limitations.

---

[9] The Appeals Council did consider the two letters but found that they did not warrant changing the ALJ's decision. (Tr. at 5-6.)

Plaintiff's claim of error is not supported by the record.

D. <u>Past Relevant Work</u>

Finally, plaintiff contends that the ALJ erred in finding that plaintiff could do her past work as a kindergarten music teacher, arguing that her hearing loss, carpal tunnel syndrome, inability to frequently bend, stoop, squat and kneel prevent her from performing this work.

"Sedentary work" is defined by 20 C.F.R. § 404.1567(a)(2005) as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. SSR 96-9p., 61 Fed. Reg. 34,478 (1996); SSR 83-10 (1983); <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2nd Cir. 1984) (upholding SSR 83-10). Social Security Rulings are final opinions and policy of the Social Security Administration, and as such are binding on ALJs. <u>Paulson v. Bowen</u>, 836 F.2d 1249, 1252 n. 2 (9th Cir.1988). The claimant bears the burden of proof at this stage of the sequential analysis. <u>Bowen v. Yuckert</u>, 482 U.S. at 146, n. 5,107 S. Ct. 2287.

In this case, the ALJ found that plaintiff could do sedentary work, based on the opinions of Dr. Borges and Dr. Bianchi, the state agency physician, and that she could therefore do her past work as kindergarten music teacher. (Tr. at 34, 36.) The consensus of those opinions was that plaintiff could lift and carry ten pounds, sit for six hours, and stand or walk for two hours. Plaintiff's "Work History Report" indicated that her job involved playing musical instruments, singing with children, and teaching them songs and music. (Tr. at 109.) She frequently lifted up to ten pounds at most in this job. (<u>Id.</u>)

13

1    Plaintiff testified that the reason she could not hold a job as a kindergarten music
2 teacher is because the noise bothers her, and because she cannot lift anything heavy due to back
3 pain. (Id. at 339.)  This statement is somewhat at odds with her other representations that she has
4 a hearing loss.  Furthermore, if the noise bothered her as a result of her mental problems, the
5 record indicates that medication controlled these problems. Additionally, all physicians upon
6 whom the ALJ relied thought plaintiff could lift up to ten pounds which is what plaintiff stated
7 her job required.

8    Nevertheless, the description of kindergarten teacher in the Dictionary of
9 Occupational Titles conflicts with the ALJ's finding of sedentary work.

10    The United States Dept. of Labor, Employment & Training Admin., Dictionary of
11 Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining
12 the skill level of a claimant's past work, and in evaluating whether the claimant is able to
13 perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir.
14 1990).  The DOT classifies jobs by their exertional and skill requirements.  It is used by the SSA
15 to classify jobs as skilled, unskilled, or semiskilled.  (Id.)  Each job is assigned a number
16 reflecting how long it generally takes to learn the job, termed "specific vocational preparation"
17 ("SVP") time.  (Id.)

18    The DOT is a primary source of reliable job information for the Commissioner.
19 20 C.F.R. § 404.1566(d)(1).   The DOT describes kindergarten teacher work as light work:

> STRENGTH: Light Work - Exerting up to 20 pounds of force
> occasionally (Occasionally: activity or condition exists up to 1/3 of
> the time) and/or up to 10 pounds of force frequently (Frequently:
> activity or condition exists from 1/3 to 2/3 of the time) and/or a
> negligible amount of force constantly (Constantly: activity or
> condition exists 2/3 or more of the time) to move objects. Physical
> demand requirements are in excess of those for Sedentary Work.
> Even though the weight lifted may be only a negligible amount, a
> job should be rated Light Work: (1) when it requires walking or
> standing to a significant degree; or (2) when it requires sitting most
> of the time but entails pushing and/or pulling of arm or leg
> controls; and/or (3) when the job requires working at a production
> rate pace entailing the constant pushing and/or pulling of materials

even though the weight of those materials is negligible.
DOT 092.227-014.

This circuit, however, has found that the DOT does not necessarily control over vocational expert testimony. Johnson v. Shalala, 60 F.3d 1428, 1436 (9th Cir.1995) ("It was . . . proper for the ALJ to rely on expert testimony to find that the claimant could perform the two types of jobs the expert identified, regardless of their [DOT] classification").

There is no evidence in the record which specifically describes plaintiff's past work in terms of her residual functional capacity, and whether it was performed as substantial gainful activity. Therefore, based on this lack of information and inconsistencies between the ALJ's finding of sedentary work and the DOT's description of this job as light work, a remand is necessary for further workup in this regard. If plaintiff cannot do her past work, a vocational expert may be necessary to determine what other work plaintiff can do.

CONCLUSION

Accordingly, IT IS RECOMMENDED that plaintiff's Motion for Summary Judgment or Remand be granted, the Commissioner's Cross Motion for Summary Judgment be denied, judgment be entered for plaintiff, and this matter be remanded to the Commissioner pursuant to Sentence 4 of 42 U.S.C. § 405(g) for development of the record.

These findings and recommendations are submitted to the Honorable Morrison C. England, the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within ten days after being served with these findings and recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are

\\\\\
\\\\\
\\\\\
\\\\\

1  advised that failure to file objections within the specified time may waive the right to appeal the
2  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: 12/23/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Karaseni2293.ss.wpd